1  AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF NORTHERN CALIFORNIA
2  LINDA LYE - #215584
   llye@aclunc.org
3  VASUDHA TALLA - #316219
   vtalla@aclunc.org
4  39 Drumm Street
   San Francisco, CA 94111
5  Telephone: (415) 621-2493
   Facsimile: (415) 255-8437
6
   Attorneys for Plaintiffs
7
8              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9            SAN FRANCISCO-OAKLAND DIVISION

10
   AMERICAN CIVIL LIBERTIES UNION OF      Case No.
11 NORTHERN CALIFORNIA,
12                      Plaintiff,        **COMPLAINT FOR DECLARATORY
                                          AND INJUNCTIVE RELIEF FOR
13         v.                             VIOLATION OF THE FREEDOM OF
                                          INFORMATION ACT, 5 U.S.C. § 552
14 U.S. IMMIGRATION AND CUSTOMS           ET SEQ.**
   ENFORCEMENT,
15
                        Defendant.
16
17
18
19
20
21
22
23
24
25
26
27

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 *et seq.*, to enforce the public's right to information about U.S. Immigration and Customs Enforcement's ("ICE") use of surveillance technology to track the movements of drivers on America's streets.

2.      Automated License Plate Reader ("ALPR") systems combine a camera, an image-processing device, and a database to recognize and store license plates associated with date, time, and location recorded at the time of recognition.  ALPRs are deployed by local police departments, private companies, tow trucks, and repossession services to collect data on millions of drivers on the street, in apartment complexes, at shopping centers, and large employee parking lots.  Millions of license plate scans are collected each month and shared by local law enforcement agencies with dozens of out-of-state and federal agencies. Private companies can accumulate billions of pieces of data on a driver's location stretching back months or years.

3.      While local law enforcement agencies seek to use license plate data for criminal investigations, the excessive collection and storing of this data in databases—which is then pooled and shared nationally—results in a systemic monitoring that chills the exercise of constitutional rights to free speech and association, as well as essential tasks such as driving to work, picking children up from school, and grocery shopping.

4.      Earlier this year, the public learned that ICE had purchased access to two private databases of ALPR data.  The potential use by ICE of data for civil immigration enforcement, an entirely different purpose for which it was originally collected by local police—local criminal investigations—has generated widespread media interest and public concern.  Access to information about ICE's use of ALPR databases is necessary to inform meaningful public debate over the scope of government conduct that potentially threatens core civil rights and liberties protected by the Constitution.

5.      Over two months ago, on March 19, 2018 and March 21, 2018, respectively, Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC"), a non-profit

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO._____

civil rights organization, submitted two FOIA requests to Defendant Immigration and Customs Enforcement ("ICE") seeking records relating to contracts between ICE and private companies for access and use of ALPR databases, along with relevant training material, privacy policies, and other guidance regarding the appropriate use by ICE of this surveillance technology.

6.   Since that time, ICE has provided ACLU-NC with *no* records.

7.   ACLU-NC now brings this action to obtain the information to which it is statutorily entitled.

## PARTIES

8.   Plaintiff American Civil Liberties Union of Northern California is an affiliate of the American Civil Liberties Union, a national, non-profit, non-partisan organization with the mission of protecting civil liberties from government incursions, safeguarding basic constitutional rights, and advocating for open government.  ACLU-NC is established under the laws of the state of California and is headquartered in San Francisco, California.  ACLU-NC has approximately 169,000 members.  In support of its mission, ACLU-NC uses its communications department to disseminate to the public information relating to its mission, through its website, newsletters, in-depth reports, and other publications.

9.    Defendant ICE is a component of the U.S. Department of Homeland Security. ICE is an agency within the meaning of 5 U.S.C. § 552(f).  The agency has its headquarters in Washington, D.C., and field offices all over the country, including San Francisco, California.

## JURISDICTION

10.   This Court has subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. §§552(a)(4)(B) and 552(a)(6)(C)(i).  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1346.

## VENUE AND INTRADISTRICT ASSIGNMENT

11.   Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§1391(e) and 1402.  Plaintiff has its principal place of business in this district.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO._____

12.     Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco division is proper because Plaintiff is headquartered in San Francisco.

## FACTUAL ALLEGATIONS

### The Federal Government's Tracking and Storing of Americans' License Plate Information is a Matter of Significant Public Interest

13.     For most Americans, driving is a necessity.  For generations, Americans have relied on their vehicles as a source of mobility, driving through cities and towns alike, on roads and freeways, and across state lines.  A car allows people to get to work on time, pick up children after school, attend doctors' appointments, and shop for dinner. According to the AAA Foundation for Traffic Safety, nearly ninety percent of U.S. residents aged 16 years and older drive.[1]

14.     Drivers are required by state laws to display government-issued license plates on their vehicles.  Failure to mount license plates may result in citations, fines, or other various civil penalties.  License plates assist with tracking insurance, traffic enforcement, and at times criminal investigations.

15.     Yet compiling information about a driver—including the precise time, date, and location of a car—can reveal extremely sensitive information about an individual's movements. As the U.S. Court of Appeals for the D.C. Circuit explained:

> A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups – and not just one such fact about a person, but all such facts.[2]

16.     Federal and state legislatures have recognized the significant privacy interests an individual possesses in license plate information.  In 1994, Congress passed the Driver's Privacy Protection Act, 18 U.S.C. § 2721, which generally prohibits the Department of Motor Vehicles from disclosing personal information without the express consent of the person to whom such information applies.

---

[1] *See* http://publicaffairsresources.aaa.biz/wp-content/uploads/2016/09/AmericanDrivingSurvey2015_FactSheet.pdf.

[2] *United States v. Maynard*, 615 F.3d 544, 562 (D.C. Cir. 2010).

3

17.     ALPR systems sold by private companies facilitate the mass aggregation of a driver's movements over months and years.  ALPR devices can be placed on stoplights, bridges, and overpasses, or mounted on police or private cars.  The devices typically take high-speed photographs of every passing car and check the recognized license plate against "hot" or "alert" lists that instantly alert law enforcement when a match is found.[3] The license-plate data is also collected in databases, providing people with access to search for license plates and expose the historical location of drivers stretching back months or years.  Public and private entities that use ALPR systems to collect millions of license-plate scans each month often provide outside entities, both public and private, with searchable access to license-plate data collected locally.

18.     When the photograph and location information of *every vehicle* that crosses the path of an ALPR is stored and shared with law enforcement agencies and private companies, the result is a database containing hundreds of millions of data points, revealing the precise locations and travel histories of millions of innocent drivers.  In many jurisdictions, the information from these license plate readers is retained for months or years, and sometimes, indefinitely.  Longer retention periods and more widespread sharing allow law enforcement agencies to assemble a single, detailed portrait of any given individual's life.

19.     Private companies such as Vigilant Systems and Thomson Reuters possess databases containing billions of pieces of data on drivers' license plates collected across the country.  These companies sell access to their databases to law enforcement agencies and other private companies.

20.     ICE has claimed in a statement that it is not seeking to build a license plate reader database.[4]  However, in December 2017, ICE entered into contracts to gain access to nationwide

---

[3] The ACLU released a report on license-plate readers in July of 2013: YOU ARE BEING TRACKED, HOW LICENSE PLATE READERS ARE BEING USED TO RECORD AMERICANS' MOVEMENTS, https://www.aclu.org/issues/privacy-technology/location-tracking/you-are-being-tracked.

[4] *See* Privacy Impact Assessment for the Acquisition and Use of License Plate Reader (LPR) Data from a Commercial Service at 1, DHS/ICE/PIA-039, Mar. 19, 2015, https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-lpr-march2015.pdf.

databases of ALPR data.  These contracts have generated significant public interest and concerns over the use of surveillance technology to target immigrants for arrest and deportation.[5] Even the limited knowledge of the relationship between ICE and private ALPR companies that has come to public light to date has led localities, including sanctuary cities, to reject or delay contracts for ALPR technology.[6]

      21.    ICE's access to ALPR databases implicates the privacy rights of drivers and the use of information for purposes far afield from those justifying its initial collection.  Further, ICE's use of ALPR databases to locate individuals threatens the freedom of drivers to engage in the necessary activities of daily life.

      22.    ICE has not made publicly available its contracts with the private companies that operate those ALPR databases.  These contracts set forth the terms governing the ALPR data and databases to which ICE has purchased access.  Further, ICE has not made publicly available the internal privacy guidance or training materials governing its personnel's access and use of ALPR data and technology.  Audit logs showing the frequency with which ICE queries ALPR databases, the types of investigations for which it does, and details regarding the sharing of ALPR data among ICE and other federal, state, and local agencies, are also non-public.  As such, the public is unaware of the extent and purposes to which their personal information is shared among ICE, state and local agencies, and third parties. And the public has no knowledge of ICE's use, maintenance, and sharing of any "hot" or "alert" lists stored in its vendors' ALPR

---

[5] *See* Russell Brandom, *ICE Is About to Start Tracking License Plates Across the US*, The Verge, Jan. 26, 2018, https://www.theverge.com/2018/1/26/16932350/ice-immigration-customs-license-plate-recognition-contract-vigilant-solutions; Tal Kopan, *ICE Inks Contract for Access to License Plate Database*, CNN, Jan. 26, 2018, https://www.cnn.com/2018/01/26/politics/ice-license-plate-readers/index.html; Chantal Da Silva, *City Refuses to Let ICE Track License Plates With 'Digital Deportation Machine'*, Newsweek, Feb. 14, 2018, http://www.newsweek.com/city-refuses-let-ice-track-licenses-places-digital-deportation-machine-806845.

[6] *See* Tracy Rosenberg, *City of Alameda Rejects ALPR Contract with Vigilant*, Oakland Privacy, Feb. 7, 2018, https://oaklandprivacy.org/2018/02/07/city-of-alameda-rejects-alpr-contract-with-vigilant/; Tracy Rosenberg, *San Pablo Postpones $2.9 Million Dollar ALPR Contract with Vigilant*, Oakland Privacy, Mar. 19, 2018, https://oaklandprivacy.org/2018/03/19/san-pablo-postpones-2-9-million-dollar-alpr-contract-with-vigilant/.

1    system.

2        23.    The information sought in ACLU-NC's FOIA request would reveal for the first-

3    time information concerning ICE's use, maintenance, and handling of sensitive personal

4    information, and would allow members of the public a meaningful opportunity to vet the federal

5    government's surveillance of motorists.  This information should shed light on important and on-

6    going public debates about ALPR technology in communities across the country.[7]

7
     **Plaintiff Submitted a FOIA Request to ICE Headquarters But ICE Has Failed to Produce**
8                                     **Any Records**

9        24.    On March 19, 2018, ACLU-NC submitted a FOIA request to the ICE

10   Headquarters in Washington, District of Columbia, seeking information relating to contracts by

11   and between ICE and contractors related to ALPR technology.  A copy of Plaintiff ACLU-NC's

12   request is appended hereto as Exhibit 1.

13       25.    In particular, the request seeks records containing the following information:

14

15   1.   Any contracts, addenda, attachments, memoranda of understanding,
          amendments, modifications, or other agreements made and/or negotiated
16        pursuant to the Request for Quotation No. 70CDCR18Q00000005, "Request
          for Quote for Access to License Plate Reader (LPR) Database," issued by
17        ICE/Detention Compliance & Removals on December 15, 2017 (the "Request
          for Quotation"), along with communications related to such contracts,
18        memoranda of understanding, or other agreements;

19   2.   The contract with the vendor that is referenced in the document titled "Privacy
          Impact Assessment Update for the Acquisition and Use of License Plate
20        Reader (LPR) Data from a Commercial Service," DHS/ICE/PIA-039(a), dated
          December 27, 2017 (the "Updated PIA") related to access to a commercial
21        ALPR database, along with all associated communications, addenda,
          attachments, memoranda of understanding, amendments, modifications, or
22        other agreements;[8] and

23   3.   Any contracts, addenda, attachments, memoranda of understanding,
          amendments, modifications, or other agreements made and/or negotiated
24        pursuant to the Solicitation and Contract Award No. 70CDCR18P00000017,

25   _____

     [7] *See, e.g.,* Sophie Haigney and Annie Ma, *Immigrant activists ask Livermore's Vigilant*
26   *Solutions to end ICE contract*, SAN FRANCISCO CHRONICLE, May 11, 2018,
     https://www.sfgate.com/bayarea/article/Immigrant-activists-ask-Livermore-s-Vigilant-
27   12908715.php.
     [8] *See* https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-lpr-january2018.pdf.

                    COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
                    CASE NO._____

"Access to Commercially Available LPR Database," issued by ICE, along with communications related to such contracts, memoranda of understanding, or other agreements.[9]

26.    ICE acknowledged receipt of the request on March 28, 2018 and assigned a tracking number 2018-ICFO-26258 to the request.

27.    More than 20 working days have passed since ICE received the request.

28.    As of the date of the filing of this Complaint, Plaintiff ACLU-NC has not received any response from ICE to the request.

29.    As of the date of the filing of this Complaint, Plaintiff ACLU-NC has not received a determination from ICE of whether ICE will comply with the request.

30.    As of the date of the filing of this Complaint, Plaintiff ACLU-NC has not received any documents from ICE that are responsive to the request or any correspondence indicating when ICE might provide any documents.

31.    Plaintiff ACLU-NC has exhausted all applicable administrative remedies.

32.    ICE has wrongfully withheld the requested records from Plaintiff ACLU-NC.

**Plaintiff Submitted a Second FOIA Request to ICE Headquarters But ICE Has Failed to Produce Any Records**

33.    On March 21, 2018, Plaintiff ACLU-NC submitted a second FOIA request to the ICE Headquarters in Washington, District of Columbia, seeking training materials, privacy guidance, audit logs, and other documents relating to ICE's use and sharing of ALPR data.  A copy of Plaintiff ACLU-NC's request is appended hereto as Exhibit 2.

34.    In particular, the request seeks records containing the following information:

1.    Any quotations, information, offers, proposals or other responses provided in response to Request for Quotation No. 70CDCR18Q00000005, "Request for Quote for Access to License Plate Reader (LPR) Database," issued by

---

[9]*See*
https://www.fbo.gov/index?s=opportunity&mode=form&id=5629706f5736d22bd17b11965f5ac4c&tab=core&_cview=0.

ICE/Detention Compliance & Removals on December 15, 2017 (the "Request for Quotation"), attached hereto as Attachment A;

2. Any training materials, written instructions, presentations, manuals, or publications regarding the commercial ALPR database contract referenced in the Updated PIA, the contracts discussed by the Request for Quotation, and the **Commercial ALPR Database Contract**, including but not limited to training or written instructions referenced on pages 6–7 of the Request for Quotation;

3. **The document titled** "Privacy Guidance: Agency Access to and Use of License Plate Reader Data and Technology," issued December 2017 from the ICE Office of Information Governance & Privacy that is referenced in footnote 2 of the Updated PIA;

4. Any communications between agency personnel and any representative of any law enforcement agency in the state of California regarding the use or sharing of license plate reader data by agency personnel, or by third parties;

5. Audit logs for ICE's use of the Vendor's ALPR database, exported in Excel format, which are available through the Vendor's web interface (as described on page 16 of the Updated PIA), including any statistical reports generated by the Vendor (as described on page 17 of the Updated PIA);

6. Any information tending to show ALPR data[10] from other entities to which ICE has access, including but not limited to a sharing report, in Excel format, generated by the Vendor's system listing all entities sharing data with ICE and all entities with which ICE has shared ALPR data;

7. The names of any "hot" or "alert" lists that ICE has created, maintains, shares, or receives, including but not limited to any such lists stored in the Vendor's ALPR system; and

8. Audit logs for ICE's use of the database(s) to which it has access pursuant to the Commercial ALPR Database Contract, exported in Excel format.

35.     ICE acknowledged receipt of the request on April 2, 2018 and assigned a tracking number 2018-ICFO-27097 to the request.

36.     More than 20 working days have passed since ICE received the request.

37.     As of the date of the filing of this Complaint, Plaintiff has not received a determination from ICE of whether ICE will comply with the request.

38.     As of the date of the filing of this Complaint, Plaintiff has not received any documents from ICE that are responsive to the request or any correspondence indicating when ICE might provide any documents.

---

[10] "ALPR data" means information or data collected through the use of an automated license-plate reader system.

39.     Plaintiff has exhausted all applicable administrative remedies.

40.     ICE has wrongfully withheld the requested records from Plaintiff.

**FIRST CLAIM FOR RELIEF**
**Violation of Freedom of Information Act For**
**Wrongful Withholding Of Agency Records**

41.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

42.     ICE has wrongfully withheld agency records requested by Plaintiff under FOIA and has failed to comply with the statutory time for the processing of FOIA requests.

43.     Plaintiff has exhausted the applicable administrative remedies with respect to ICE's wrongful withholding of the requested records.

44.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents because ICE continues to improperly withhold agency records in violation of FOIA.  Plaintiff will suffer irreparable injury from, and have no adequate legal remedy for, ICE's illegal withholding of government documents pertaining to the subject of Plaintiff's FOIA request.

///
///
///
///
///
///
///
///
///
///
///
///
///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO._____

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

A.     Order Defendant ICE to promptly process and release all responsive records;

B.     Declare that Defendant ICE's failure to disclose the records requested by Plaintiff is unlawful;

C.     Award Plaintiff its litigation costs and reasonable attorney's fees incurred in this action;

D.     Grant such other relief as the Court may deem just and proper.


Dated: May 23, 2018                          AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION OF NORTHERN CALIFORNIA


                                             By:___/s/ Vasudha Talla_____
                                                    Vasudha Talla
                                                    Linda Lye

                                             Attorneys for Plaintiff